UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

    NORTHPOINT VILLAGE                     Case No. 08-53097-SWR
    OF UTICA, LLC                           Chapter 11
                                                Hon. Steven W. Rhodes

        Debtor.
_____/

GERALD L. DECKER (P 31485)
Attorney for Debtor
42700 Schoenherr Rd., Ste. 3
Sterling Heights, MI 48313
(586) 532-1122

## SECOND AMENDED COMBINED DISCLOSURE STATEMENT AND REORGANIZATION PLAN

Northpoint Village of Utica, LLC proposes the following Plan of Reorganization pursuant to §1123 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

As used in this plan, the following terms shall have their respective meanings specified below, unless the context requires otherwise:

    A.    "Administrative Creditor" shall mean any Creditor entitled to payment of an Administrative Expense.

    B.    "Administrative Expense" shall mean any cost or expense of administration of this Chapter 11 case allowed under §503 of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses of operating the business of the debtor, including loans and other advances to the Debtor, and all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under §330 and §503 of the Bankruptcy Code, and any fees or charges assessed against the Debtor.

C.  "Allowed Claim" shall mean a Claim or such portion of a Claim, (I) that has been timely filed with the Clerk of the Court, or filed late with leave of the Bankruptcy Court after notice and opportunity for hearing given to counsel for Debtor and Committee, or filed with such other person as the Court may direct which has not been objected to as provided in Article XI of this Plan, or which is listed by the Debtor as not disputed, contingent or unliquidated in the schedules, in each case within such time as may be prescribed by the Bankruptcy Rules, or by Final Order of the court, or, (ii) that has been allowed by a Final Order of the Court.  Unless otherwise specified herein or by Final Order, "Allowed Claim" shall not include post-petition interest on such claim.

D.  "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended (11 U.S.C. §101 *et. seq.*).

E.  "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, having jurisdiction over this Case.

F.  "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure (F.R.B.P.).  To the extent applicable, Bankruptcy Rules shall also refer to the Local Rules of the United States District Court for the Eastern District of Michigan, as amended, and the Local Rules of the Bankruptcy Court for the Eastern District of Michigan, as amended.

G.  "Case" shall mean the proceeding under Chapter 11 of the Bankruptcy Code which is presently captioned "In Re: Northpoint Village of Utica, LLC, Debtor Case No. 08-53097-SWR which is pending in the Bankruptcy Court.

H.  "Claim" shall mean any Claim against the Debtor as defined in §101(5) of the Bankruptcy Code.

I.  "Code" shall mean the Bankruptcy Code.

J.  "Committee" shall mean and refer to any official committee of Creditors holding Unsecured Claims or other claims which has been, or may be appointed by the Office of the U.S. Trustee.

K.  "Confirmation Date" shall mean the date upon which the Bankruptcy Court shall enter an order confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

L.  "Confirmation Hearing" shall mean and refer to the hearing conducted by the Bankruptcy Court to consider the confirmation of the Debtor's Plan.

M. "Contested Claim" shall mean any claim as to which Debtor or any other party in interest has interposed an objection or commenced an adversary proceeding in accordance with the Bankruptcy Rules, which objection has not been determined by order or judgment no longer subject to appeal.

N. "Creditor" shall mean any person who has a claim against the Debtor that arose on or before the Petition Date or a claim of any kind specified in §502(g), §502(h) or §502(i) of the Bankruptcy Code.

O. "Debtor" shall mean Northpoint Village of Utica, LLC.

P. "Effective Date" shall mean and refer to the tenth (10th) day after the Confirmation Date; provided, however, that no appeal of the Order of Confirmation has been filed. In the event that such an appeal is filed, the Effective Date shall mean and refer to the tenth (10th) day after the Order of Confirmation becomes final and binding upon all parties.

Q. "Final Order" shall mean an Order of the Bankruptcy Court as to which (i) the time for appeal has expired and no appeal has been timely taken; or (ii) any appeal that has been timely taken and has been finally determined or dismissed; or (iii) an appeal has been timely taken but such order has not been stayed within ten (10) days after the filing of such appeal.

R. "Interest" shall mean and refer to the rights of the equity security holders as these rights are governed by applicable corporate law.

S. "Petition Date" shall mean the date this case was filed.

T. "Plan" shall mean this Plan of Reorganization, either in its present form or as it may be altered, amended, supplemented or modified from time to time.

U. "Priority Claim" shall mean any Claim or portion of a Claim, other than an Administrative Expense which is entitled to priority in payment under §507(a) of the Bankruptcy Code.

V. "Priority Creditor" shall mean any Creditor that holds a Priority Claim.

W. "Unsecured Claim" shall mean any unsecured Claim other than a Claim for an Administrative Expense or a Priority Claim.

X. "Unsecured Creditor" shall mean any Creditor that holds an Unsecured Claim.

# ARTICLE II

## TREATMENT OF CLAIMANTS NOT SUBJECT TO CLASSIFICATION OR OTHERWISE NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN

For the purposes of approval and implementation of this Plan and the resultant reorganization of the Debtor, Administrative Creditors and Priority Creditors shall be paid on account of their respective Administrative and Priority Claims in accordance with the provisions set forth below.

A. GROUP I. Group I shall consist of expenses which are entitled to priority under §507(a)(2) and shall consist of the professionals of the Debtor and the Committee, including the attorneys and its accountants, as well as all creditors supplying goods and services to the Debtor during the Chapter 11 proceeding. This group shall also consist of any unpaid tax liability arising during this Case. This group shall be paid on the later of (i) the Effective Date or (ii) the date by which payment would be due in the ordinary course of business between the Debtor and such Administrative Creditor.

B. GROUP II. The claim of Group II shall consist of Allowed Claims which are tax claims of each taxing authority which are entitled to priority under §507(a)(8) of the Code. The claimants of this Group shall receive on account of such Priority Claim monthly cash payments over a period not exceeding five (5) years from the date of the filing of the petition (May 29, 2008), of a value as of the Effective Date of the Plan equal to the allowed amount of such Priority Claim plus interest. Payments to the members of this Group shall begin not later than three (3) months after the Effective Date notwithstanding the addition of interest which shall accrue from and after the Effective Date. Three (3) months after the Effective Date, the Priority Claim owed to the respective taxing authority shall be amortized to allow for a monthly payment of both principal and interest in equal monthly installments. The number of months to allow for a full payment of the amortized Priority Claim shall be equal to the number of months existing between the month the first installment is due and the month which represents the last month of the (5th) year from the date of filing the petition (May 29, 2008). Debtor reserves the right to challenge any Priority Claim, which challenge may include but not be limited to a challenge to the penalty portion of such Claim, the interest determined to be applicable, and the amount and the value of the assessment of taxes which form the basis of the tax rate, through the objections to claims proceedings set forth in this Plan. This shall include, without limitation, an objection to the assessment of the Debtor's real or personal property which may or may not have been made by the respective taxing authority.

# ARTICLE III

## SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER PLAN AND THOSE IMPAIRED UNDER THE PLAN

Class I - Class I shall consist of funds due to Mike Genson Mechanical, LLC ("Genson") pursuant to a judgment obtained following a trial in the Macomb County Circuit Court before Judge Matthew Switalski, Case No. 06-001065-CH wherein a Judgment for Foreclosure of Plaintiff's Construction Lien and for Attorney Fees and Costs was entered in the amount of $593,316.00. The judgment accrues interest at the statutory rate until paid in full.

As of September 25, 2008, Genson has not yet filed a claim although correspondence dated September 11, 2008 from Genson's counsel indicates that Genson is seeking $694,439.00.

Once the claim is filed the Debtor will examine it and file an objection if necessary.

The allowed claim will be paid in full within 60 days of the confirmation date or within 2 weeks of the time a final order is entered regarding the allowance of the claim, whichever is later.

Funds necessary to pay this claim will be obtained from Flagstar Bank, or another entity, as a result of a refinancing of the entire facility.

Genson's security interest in the real estate shall be released upon payment of the allowed claim such that the entity providing the financing will be entitled to a first lien position in the real estate upon which Genson was granted a security interest. This class is not impaired.

Class II - Class II shall consist of the secured claim due Flagstar Bank arising out of funds advanced by Flagstar to the Debtor for construction purposes. The current obligation with respect to Flagstar's secured claim matures on October 5, 2008 and is in the amount of approximately $10,238,000.00 and is secured by the real estate and the personal property. The Debtor will enter into a new obligation with Flagstar, or a different entity, in order to obtain funds necessary to refinance the existing loan, pay the Genson lien and pay property taxes that are currently due on the property. Flagstar, or the entity providing funding, shall have a first lien position in the building and personal property located within the building. This class is not impaired.

Class III - Class III shall consist of the unsecured non-priority claim of Christopher Aiello, the Debtor's counsel in the state court case with Mike Genson Mechanical, in the amount of $66,357.11. The Debtor is contemplating a malpractice claim against Christopher Aiello and will either file said action or negotiate a lower amount to be paid to Aiello. This claim will be paid or not paid, when rights regarding a malpractice claim have been exhausted or when a settlement agreement is reached with Aiello. This class is impaired.

Class IV - Class IV shall consist of all other unsecured non-priority claims which represent advances from entities affiliated with the Debtor through common ownership of the principal, Salvatore Biondo. No distributions will be made to creditors in this class until all other classes have been paid. This class is impaired.

Class V - Class V shall consist of the interests of the owners and members of the Debtor. The owners and members shall retain that ownership interest in the Debtor.

In the event that a creditor objection cannot be resolved, the Debtor shall either modify the plan or amend this provision in accordance with current bankruptcy law. Class V is not impaired.

## ARTICLE IV

## EXECUTION AND IMPLEMENTATION OF THE PLAN

The Debtor reasonably believes that its future operations will generate sufficient funds to satisfy the current mortgage obligations under the Plan and will refinance the real estate within 60 days to satisfy the other obligations of the plan. Other sources of cash may be explored and utilized by the Debtor to the extent that such cash infusions are necessary to meet the obligations of the Plan, including additional cash infusions by the principal of the Debtor, Salvatore Biondo.

## ARTICLE V

## EFFECT OF CONFIRMATION

The confirmation of this Plan shall act to discharge and release the Claims of all Creditors against the Debtor, the same constituting a full, total and complete settlement with said Creditors and Interest holders. Confirmation shall also act as a merger and relinquishment of any Claims Creditors may have against the Debtor and as provided in the treatment of the Creditors in Article III. There shall be no prohibition against the Debtor from merging, from issuing additional stock or being acquired by another person, company, partnership or corporation, or from obtaining any financing from any lender willing to provide any financing to the Debtor. The obtaining of said financing shall not in any way obligate the Debtor to make any earlier payments or distribution except as provided in the Plan.

## ARTICLE VI

## MODIFICATION OF THE PLAN

Debtor may propose from time to time amendments or modifications of this Plan prior to its confirmation, without leave of the Court. Subsequent to confirmation, the Debtor may upon notice to the affected Creditor only, and only with leave of the Bankruptcy Court remedy any

6

defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes of, and effect of, this Plan.

If the Bankruptcy Court determines that the modification affects all the Creditors, or if the Debtor proposes a material modification affecting all Creditors, then such modification shall be governed by §1127 of the Bankruptcy Code and Article XII, Paragraph D of the Plan.

## ARTICLE VII

## JURISDICTION OF THE COURT

This Court shall retain jurisdiction in this matter until the Plan has been fully consummated for, including but not limited to, the following reasons and purposes:

A. The classification of the Claim of any Creditor and the re-examination of the Claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors. The failure by the Debtor to object to, or to examine any claim for the purposes of voting, shall not be deemed to be a waiver of the right of Debtor to object to, or re-examine the Claim in whole or in part.

B. Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtor or any other party. This shall include, but not be limited to, any cause of action, avoiding power or right of the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code.

C. The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of this Plan.

D. The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code and as provided as in Articles VI and XII of the Plan.

E. To enforce and interpret the terms and conditions of this Plan and to enter orders in aid of confirmation of this Plan.

F. Entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary, including without limitation, injunctions to enforce releases or forbearance in favor of guarantors and/or equity security holders, which would assist the Debtor with accomplishing the obligations of the Plan.

G. The review of any objections to claims filed by the Debtor pursuant to Article XI of the Plan.

H. The review and approval of all professional fee applications for services rendered prior to the Confirmation Date and for services rendered in connection with the Plan after the Confirmation Date, to the extent that the Debtor disputes all or a portion thereof.

I. Any lawsuit initiated by the Debtor in accordance with §506 or §547 through 553 of the Code.

J. Entry of an order concluding and terminating this Case.

## ARTICLE VIII

## TITLE TO PROPERTY

Title to the property of the Debtor shall revest in the Debtor upon the Effective Date of the Plan. The Debtor shall be discharged from its status as "Debtor" and its affairs and business shall be thereafter conducted by said Debtor without Court supervision except as may be governed by Article VII of the Plan.

## ARTICLE IX

## UNITED STATES TRUSTEE FEES

Debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) within ten (10) days of entry of the Order of Confirmation and simultaneously to provide the United States Trustee with an appropriate affidavit indicating the cash disbursements for the relevant period. Payment of said fees shall continue until the case has been converted, dismissed or closed by the Bankruptcy Court but in any event not beyond ninety (90) days from confirmation.

## ARTICLE X

## EXECUTORY CONTRACTS

All executory contracts of the Debtor not expressly rejected which are not within thirty (30) days after the Confirmation Date the subject of pending applications to reject and disaffirm shall be deemed assumed. Within thirty (30) days after the Confirmation Date, the Debtor shall be allowed to file a Notice of Rejection of Executory Contract (the "Notice") with the Bankruptcy Court and the executory contract which is the subject thereof shall be deemed rejected. Any creditor who has a Claim as a result of such rejection shall have thirty (30) days after receipt of

the Notice to file a Proof of Claim. The Notice shall contain a provision informing any potential creditor of this requirement. Debtor may file an objection thereto in accordance with Article XI.

## ARTICLE XI

## OBJECTIONS TO CLAIMS

Debtor may object to the allowance of any Claim which has been listed on the schedules filed by the Debtor or filed by the Creditor, within this Case, within sixty (60) days after the Effective Date. In the event that any Claims are filed after the time allowed by the Bankruptcy Court for such filings, the Debtor shall have until the later of (a) sixty (60) days from the later of the date of service upon (i) Debtor's counsel, Gerald L. Decker or (ii) the Debtor, or, (b) sixty (60) days after the Effective Date, to file an objection to such Claims.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

A. <u>Forced Acceptance ("Cram Down")</u>. In the event that any Impaired Class fails to accept this Plan in accordance with §1126 of the Bankruptcy Code allowing confirmation of this Plan in accordance with §1129(a) of the Bankruptcy Code, the Debtor reserves its rights to request confirmation of this Plan in accordance with "cram down" provisions of §1129(b) of the Bankruptcy Code.

B. <u>Authorizations</u>. The Debtor is authorized, empowered and directed to execute such documents and take all other actions necessary and proper in order to effectuate the terms of this Plan.

C. <u>Transactions on Business Days</u>. If the Effective Date or any other date on which a transaction or distribution may occur under the Plan shall occur on a day that is not a Business Day, the transactions or distributions contemplated by the Plan to occur on such day shall instead occur on the next Business Day following such non-Business Day.

D. <u>Construction.</u> The rules of construction used in §102 of the Bankruptcy Code shall apply to the construction of the Plan.

E. <u>Governing Law</u>. Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without giving effect to the principles of conflict of laws thereof.

F. Section Headings. The headings of the articles, sections and subsections of the Plan are inserted for convenience only and shall not affect the interpretation of the Plan.

G. Notices. Any notice required or permitted under the Plan shall be in writing and served either by: (a) certified mail, return receipt requested, postage prepaid; (b) hand delivery; or (c) reputable overnight delivery service, freight prepaid, addressed to the following parties:

Gerald L. Decker, Esq.
42700 Schoenherr Rd., Ste. 3
Sterling Heights, MI 48313

Salvatore Biondo
50258 Van Dyke, Ste. B
Utica, MI 48317

H. Future Professional Fees. As of the Confirmation Date, any services performed by any professional on behalf of the Debtor or the Committee with respect to this Case after the Confirmation Date, shall not be subject to the prior review and approval of the Bankruptcy Court. All such fees shall be billed directly to the Debtor and the Bankruptcy Court shall only review that portion of the billed services to which the Debtor objects. The portion not objected to shall be paid in accordance with the terms of the invoice.

I. Claims Deadline: The last day for the filing of claims with the Bankruptcy Court is October 1, 2008, the day fixed pursuant to L.B.R. 3003-1 as the deadline for the filing of proofs of claims. Pursuant to F.R.B.P. 3002(c)(4), any claim arising from the rejection of an executory contract or unexpired lease of the Debtor shall be filed as provided in Article X.

J. Administrative Claims Bar Date: All administrative expense claims shall be filed within sixty (60) days after the Effective Date, or such administrative claims shall be deemed waived and disallowed.

K. Binding Effect: The Plan and the Confirmation Order will be binding upon, and will inure to the benefit of, the Debtor, the holders of all claims and interests, and their respective successors and assigns.

L. Severability of Plan Provisions: After the Effective Date, should any term or provision of this Plan be held by the Bankruptcy Court to be invalid, void, or unenforceable, the remainder of the term and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

M. Enforcement of Liens: Except as otherwise expressly provided in this Plan, no lien retained by or granted to any creditor under this Plan may be foreclosed, sold at tax sale, or

otherwise enforced except upon the occurrence of a default by the Reorganized Debtor in its performance under the terms of this Plan.

## ARTICLE XIII

## REVOCATION OF THE PLAN

The Debtor reserves the right, prior to the Confirmation Date, to revoke or withdraw the Plan without notice. If the Debtor revokes or withdraws the Plan as provided in the preceding sentence, or if confirmation does not occur, then the Plan will be null and void in all respects, and nothing contained in the Plan will: (1) constitute a waiver or release of any claims by or against, or any interest in, the Debtor; or (2) prejudice in any manner the rights of the Debtor.

## ARTICLE XIV

## TITLE TO PROPERTY

Title to all property of the estate shall vest in the Reorganized Debtor (subject to the rights of the Liquidating Agent pursuant to this plan) on the Effective Date, free and clear of any claims or interests, including liens, except as expressly provided in this Plan.

# DISCLOSURE STATEMENT

I. **Description of Debtor**

 A. The Debtor is a Michigan limited liability company owned 99% by three separate trusts which each own a 33% interest and a 1% interest retained by the managing member, Salvatore Biondo. The Debtor was formed on August 14, 2004.

 B. <u>The Principals:</u>

  The managing member of Debtor is Salvatore Biondo, who has and continues to manage the day to day operations of the company.

  Mr. Biondo is not taking any compensation in the form of wages from the Debtor at this time.

  Mr. Biondo has guaranteed the debt to Flagstar Bank. In addition, Mr. Biondo is the beneficial owner of numerous entities that hold unsecured non-priority debts owed by the Debtor. These debts are representative of loans made by the various entities to the Debtor during the early stages of construction. The loans are documented through book entries of the various entities and are not represented by separate promissory notes or security agreement.

 C. The primary asset of the Debtor is a recently constructed building designed to provide living arrangements for seniors still capable of independent living. The assets of the Debtor include the furnishings within the common area and lighting and window treatments in each of the 120 units contained within the building. Currently approximately 68 of the units are occupied. The doors opened to tenants in December 2005.

II. **Post-Petition Events of Significance**

 A. There have been no post-petition transfers outside the ordinary course of business.

 B. There have been no cash collateral orders, no post-petition financing issues or adequate protection orders.

 C. The only litigation that is current during the case is the Motion to Dismiss brought by Mike Genson Mechanical, LLC. The Debtor currently seeks a modification from the automatic stay in order to continue a state court appeal of the judgment of foreclosure which Mike Genson Mechanical, LLC holds.

### III. Assets and Liabilities

    A.    Liquidation Analysis

| Collateral | Creditor Holding Lien | Market Value | Forced Sale | Secured Claim |
|---|---|---|---|---|
| 88,640 sq. ft. multiple family residential building located at 45201 Northpoint Blvd. Utica, Michigan | Mike Genson Mechanical, LLC | 12,850,000.00 | 11,500,000.00 | 694,000.00* |
| | Flagstar Bank | See above | See above | 10,238,702.00 |
| Furnishings, personal property located at 45201 Northpoint Blvd. Utica, Michigan | Flagstar Bank | 600,000.00 | 300,000.00 | See above |

The Debtor will object to the anticipated claim of Mike Genson Mechanical in the amount of approximately $694,000.00 in that it is anticipated the claim includes interest and attorney fees earned subsequent to the date the judgment was entered which the Debtor has not yet had an opportunity to review.

    B.    Risks, Conditions and Assumptions of Stated Values

Fair market value of the real estate is based on an appraisal dated October 11, 2007 and represents an as-is value as of that date. An appraisal done on that same date estimates the stabilized value, that is the value when the building is fully occupied, to be $13,850,000.00. The appraisal was done by Richard E. Hanton and Associates, LTD and is attached. The value showing for a forced sale price is an estimate.

    C.    Potential Claims and Causes of Action.

There are no known potential claims or causes of action, although the Debtor does plan to pursue the appeal of the state court judgment ordered to Mike Genson Mechanical, LLC.

    D.    Priority Claims

There are no priority claims. Administrative expenses will consist of fees due the attorney for the Debtor which will not exceed $20,000.00.

E.  Total of Non-Priority Unsecured Claims.

Total non-priority unsecured claims as of the filing date which are represented by inter-company loans made by entities controlled by Salvatore Biondo totaling $850,638.17 and one unpriority unsecured debt filed by Christopher P. Aiello, PC for $66,357.11 for legal fees incurred during the representation of the state court action which resulted in the judgment to Mike Genson Mechanical.

F.  Guaranteed Debt

Salvatore Biondo has guaranteed the debt to Flagstar Bank.

## IV. Implementation of Plan

A.  Financial Summaries:

Attached hereto are the company tax returns for the year ended 2005, 2006 and 2007 and a document showing occupancy rates since the date the facility was opened as well as a projection budget for the period September 2008 through July 2010. Monthly financial reports for June, July and August are attached hereto.

B.  Future Principles of Business and Compensation

The business will continue to be managed by Salvatore Biondo who will not draw a salary.

C.  Tax Ramifications for Continuing Entity

The continuing entity will continue to incur all taxes with an ongoing company. Start up losses will likely be allocated to future earnings.

## V. Legal Requirements

A.  Voting Procedures

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interest, that are impaired under the plan.

Accordingly, classes of claims or interests that are not impaired are <u>not</u> entitled to vote on the plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in

accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the plan will be counted only with respect to claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities <u>other</u> than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. §502 and Bankruptcy Rule 3018.

Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot by mail to the debtor's attorney by the deadline previously established by the court.

Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the debtor's attorney.

B.  Acceptance

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.

C.  Confirmation

11 U.S.C. §1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a plan under 11 U.S.C. §1129(a) are these:

1. Each class of impaired creditors and interest must accept the plan, as described in Paragraph VI.B., above.

2. <u>Either</u> each holder of a claim or interest in a class must accept the plan, <u>or</u> the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

D. Modification

The debtor reserves the right to modify or withdraw the plan at any time before confirmation.

E. Effect of Confirmation

If the plan is confirmed by the Court:

1. Its terms are binding on the debtor, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the plan.

2. Except as provided in the plan:

   a. In the case of a <u>corporation</u> that is reorganizing and continuing business:

      (1) All claims and interests will be discharged.

      (2) Creditors and shareholders will be prohibited from asserting their claims against or interest in the debtor or its assets.

   b. In the case of a <u>corporation</u> that is liquidating and not continuing its business:

      (1) Claims and interests will not be discharged.

      (2) Creditors and shareholders will not be prohibited from asserting their claims against or interests in the debtor or its assets.

c. In the case of an individual or husband and wife:

(1) Claims will be discharged, except as provided in 11 U.S.C. §§523 and 727(a).

(2) Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. §§523 and 727(a).

/s/ GERALD L. DECKER
Attorney for Debtor
42700 Schoenherr Rd., Ste. 3
Sterling Heights, MI 48313
(586) 532-1122
P 31485
gldeckerlaw@aol.com

Dated: September 29, 2008